First case is LSI Industries v. Imagepoint. Both rise for just a second. Would you just stand there for a second? Courts of appeals review records and correct errors. They don't offer lectures. But sometimes you hit a record that suggests to you quite unequivocally that the district judges receive very little help from the parties in narrowing the issues and traversing the challenges of a difficult patent case. We have sitting with us one of the more eminent district judges. We have one of your appellate judges who has tried several patent cases to juries and without juries and this record just doesn't suggest to any of us that the district court has received much help in limiting the issues on a case that as it comes on appeal presents fifteen different claim terms in different arrays in six different patents, some last patent allegedly of being applied to the first patent and gentlemen I just want to and ladies excuse me I just want to without trying to write an appellate court pamphlet here urge that council has some responsibility to step in and work together to help the court in those circumstances. I'll just echo my concurrence with that. In the patent area in particular where things sometimes can be quite complex particularly where we are before judges that may not have a great deal of patent experience we have an extra responsibility as members of the bar to try to assist the court to reach the correct result that takes that takes extra effort and sometimes is seemingly contradictory to one's obligation as an advocate for one's client but I think the two go hand in hand. I concur with that opinion. Mr. Arts you may proceed. Thank you Mr. Arthur. John Arts representing the defendant is calling for a parking display or MDI as it's called. I'm going to split my time with council for an image point as well and go to the director for ten minutes and he's going to do the bottle as marker and the image point for five minutes if that's all right with the court. Fine. Proceed. Without interrupting later is it clear that MDI and its co-party marketing displays and image point have the same issues? Yes. There really is no difference in the presentations by those parties? That's correct. As far as you know also LSI and Kaiser have the same issues. Yes, those two, LSI and Kaiser are locked in their positions and image point and MDI are locked in their positions. Basic issue here is whether statements made by the patentee in the prosecution history constitute a clear and unmistakable disclaimer of the claims scope and thus limit the claims in the manner set forth by the district court as claim construction. Just taking that issue to start with why would we apply statements made in the re-exam to patents that were not in re-examination at all? The district court made a lot of different errors. It went upstream with something from the fifth and sixth patents and applied it to the claim terms in the first four patents and it went downstream with individual and applied that to the fifth and sixth patents that are actually the last five patents which it should. If it's the same term, for example, it's used in all six patents, then you have a consistent construction but you can't read claims or terms that are specific in one patent and apply it to others where it's not there. That's just plain claim construction law. But the case law is clear and the ordinary customary meaning of the claim term should apply. There's a number of cases by the district court over the last half dozen years Elbix, Golight, Rambo, Sandisk, Fortis, a whole bunch of cases. It's improper to take isolated statements as the district court did here from the prosecution history and then limit the claims in that manner to the prosecution history as a whole. And that's why we had to include all of this in the appendix. There's six prosecutions for the original six patents and the three re-exams. There are nine prosecution histories. You have to look at it as a whole. Mr. Arts, it seems to me that you've got as I understand the case, you've got to convince us that the claim constructions were wrong on every one of these things and if you don't convince us with respect to the ones you don't convince us then you've got to establish that there's at least a genuine issue of material fact that would make summary judgment inappropriate. Am I correct? Yes. So to that extent starting with the claim construction there's so many things here I'd like to direct your attention to the three because I do think you've got some arguments here about some of these claim constructions. But let me take you to the three that I think are the toughest ones, your toughest cases and start with the removably secured limitation. Why was the district court's determination of a disavowal on that issue incorrect? The district court equated that with a snap lock with male and female type structure. You put structure into everything. Removably secured again means snap lock. A snap lock is only a shorthand term for the preferred embodiment but just because a patentee on prosecution uses a shorthand term for preferred embodiment doesn't mean it disclaims all the rest of the breadth of that term. But I mean there was an interpretation that that limitation in its various permutations related to perpendicular removal from the frame individually removable in a direction perpendicular or transverse of the plane. My understanding is your contention is that that was wrong and my question is why was that wrong? Well that particular feature is in the claims of the first four. The district judge has implied it as a limitation of the first four. But distinguishing yourself over Greenstone you specifically say in this 694 patent and that's the parent, that's the one that has the most application to everything that comes later the horizontally disposed divider members are individually removable in a direction perpendicular or traverse. You say that. And that's on the parent, the one that apparently applies to the rest, right? And that's to get around Greenstone. So it's a very important statement you're making. Your Honor, you have to look at the prosecution history as a whole. Anything that's ambiguous, anything that's contradictory, you have to take into account. You have to look at this as a competitor would look at it. Is it reasonable to assume that that was a disavowed or disclaimed? Well wait a second. Let's take a look at the language. At the appendix page 556 I just read some of that. Exactly, that's what you read from. If you look at page 555 and 557 though, you'll see it's directly contradictory. 555 says claims 10 and 11 dependent from 9 and further features to it. And then if you look at page 557, which is the next page from what Judge Rader just cited and which the district court relied upon, it says claim 10 further requires divider members recesses and retention members as well as projection members. In other words those features are directly contradicted, at least the recesses and the projection members. The other thing is the benefit. You don't have the structure from claim 9 creates the benefit of allowing you to remove it that way. But it's not in the claim. It's in the 5th and 6th patents but not in these particular claims. You can't read it into. You have to look at a fair reading as people still in the yard look at it as competitors look at it. If you look at it during the whole prosecution it's 2,000 pages. This is the only time where it's really said specifically this way. Every other time it's used specifically as to those terms in the claims. I think it was the Golight case which says if you refer to something in the prosecution industry, it only applies to the claims in which it is there. And those are the 5th and 6th patents. It's not in the claims, the first four. But I think that is the difference. It's not a clear, expressed, unmistakable, unequivocal disavowal which is required under the case law. You just don't have it in this case. Claims weren't redefined on that basis. Divider member, retention member are two examples as well, the ones I mentioned which are specifically contradicted in the next page. If the district court had looked at that and not just wholesale adopted what Ellis and I and Florida Plazzi's have given them. But if you're wrong on this one, this applies to all the accused devices, right? This particular claim term. Yes, and so on. This particular claim term, if we sustain MDI's argument, excuse me, if we sustain the LSI's argument and the district court's argument, you lose. No, we still win in summary judgment. Even if you adopt that claim construction. Unless you can show it a disputed issue of fact. Actually, the parties do. They do our removal, all the divider members. 99% of their divider members are removed in exactly the same way. In the summary judgment area as well, the district court did not look at that feature. It was erroneous on that score because in the summary judgment, I think it's pointed out more in image points, reply brief and main brief about the summary judgment issues. They spent more time on that than I did. I went more for MDI on prosecution histories because of the claim construction. If you look at there, you'll see that the number of errors, even assuming you take all the district court's erroneous constructions and apply those, there are several issues in summary judgment which the district court should not have granted summary judgment as a result of those claim constructions. One of which is a removable direction perpendicular to the claim frame. I don't think the examiner misled it all either because the examiner allowed claim 9, I mean he rejected claim 9 as it was. He allowed claim 10 and 11, other defendant claims. He also allowed a bunch of other defendant claims in the re-examination. In each of the re-examinations, the three patents that were in the re-exam, all three of them had additional defendant claims added to it. By claim differentiation, of course, which is one of the rules of claim construction, that should also keep those terms being applied to the general independent claims. But the ordinary and customary meaning applies to all the terms in dispute except for one, and that is because the opposed pairs has two ordinary meanings. By opposed pairs you could have a single retention member in each of the frame members, and that's an opposed pair. Or you could have a pair on each side, and that's an opposed pair. So there are two equal ordinary and customary means for opposed pairs of retention members. The district court limited it to just one. There's no reason for it, no disclaim or anything. The district court said only one of those two apply, and that's wrong, too. So it's erroneous there. If you take the ordinary and customary meaning of all of the terms, then there's no disclaim or no disavow of any of those terms in there. And we provide a roadmap, in the main brief, the blue brief by MDI, the gray brief, the reply brief, in which the court, under its geo-noble powers, we hope, will go through and look at this and realize that ordinary and customary meaning apply, we specify why it should apply, and we specify why the district court's analysis is incorrect. And we believe, under the court's not just remandist act, but actually geo-noble, select the ordinary and customary meaning of all of these terms, and that would then send it back to the district court with instruction to him that this is the way it should be done. Just to follow up, one last point on this removably secured. You referred to the statements in the prosecution history relating to dependent claims 10 and 11. And as I understand it, your argument was that the comments about individually removable in a direction perpendicular or transverse didn't necessarily relate to claim 9, but related to the more specific claims 10 and 11. Is that correct? No. That's claim 10 and 11. That was with more recess, and that's projection. But claims 10 and 11 don't talk about perpendicular or transverse removal any more than claim 9. If you look at the reexamination certificate that was issued, the dependent claims were allowed by the board of appeals specifically with those features in independent claims. If they're supposed to be in the independent claims, they wouldn't have allowed the dependent claims. For example, claim 18 talks about the divided members being removable in a direction transverse to 9. But those claims were added after this prosecution statement, prosecution history statement and argument was made. I agree. You still have to look at the whole thing as a whole. You can't just take an isolated statement and look at it. It's hard to argue that a statement as clear-cut as this statement wasn't a disavowal of claims that were pending at the time on the basis of claims that were added later. Well, even if that was inaccurate, which evidently it might have been based on what you're saying, case law is such that even an accurate statement can be overcome if you look at the whole prosecution history. You aren't limited to that. There's a give and take during prosecution and so forth. You have to look at the whole thing. What would a reasonable person, competitor, do looking at this entire file history? I take it if you're wrong on that point, your argument would be that there's at least some evidence of the fact that the accused structures are removable transversely or perpendicularly at least in some respect even though maybe they have to be slid to the side first to clear the edge or the like. That's at least a fact question. The claim is that it's only removable. As long as it's slide over, it's still removable in the way it transfers to the frame. That's true. Some of the judgment is different. Some of the judgment should not be granted on that term, even assuming the claim construction by the district court. That's correct. My point is, you have to look at the prosecution histories as a whole. That's 2,000 pages or nine prosecution histories, but the fact is that the examiner allowed these dependent claims specifically with his language dependent from the independent. The board of appeals approved it. Confirmed, or actually reversed the job of the examiner, but the board of appeals gave its blessing to these claims dependent style. These should not be able to be read as an independent claim. A reasonable competitor would not do that. A person skilled in the art would look at this and say, well, he might have said that at this point, but look at the end result. Look at all the rest of the file history, the prosecution history. Nowhere is that statement made again. Only in that one prosecution or admiral statement does that statement exist. The other 1,990 pages doesn't exist. Matter of fact, just the opposite. Matter of fact, we refer to that immovably secured another 50 or 60 times in the proper way in this file history. So you really just take the one statement out of context or isolate it, if you want to call it, in order to reach that decision. For the district court's ruling on the Markman hearing and on the claim constructions, are you at least satisfied that the record is complete, that it need not be remanded for any further record to be made on the Markman ruling? That's correct. It's really the intrinsic record. An intrinsic record is a specification of claims in the file histories, which are here. Plainly a plenary record for the Markman hearing. It's a little extensive, but it is. You don't have all the records necessarily. I would remove a little and say it is extensive. Thank you. We'll restore your rebuttal time. Will you give Mr. Davis an extra five minutes if he needs to use it? Good morning, Your Honor. May I please support? I wanted to  to the complexity of the record. We did try to minimize that complexity by maintaining our tradition of filing one consolidated brief for all of our parties rather than filing separate briefs for each party. Fifteen claim terms to be construed? Six patents? You made a big effort? You may have made an effort after you got here to keep it in one brief, but I don't see very much evidence of an effort to narrow this to some kind of manageable term for the district court. I understand, Your Honor, as the defendant, we had no control over how many patents we were pursuing. There was an effort at the district court level to consolidate issues for the district court, and I think part of the complexity here is that appellants are attempting to unravel that. If you look at the Markman briefs, the parties all agreed that similar claim terms should be grouped together and construed consistently. Removably held is a great example of that. If you look at the Markman briefs, you will see that there are some eight different terms from the six patents that were grouped together under the Removably Held rubric, and it was agreed by both parties that the same construction interpretation should apply to all of those. And certainly that goes hand in hand with this court's case law, such as Southwall, Digital Biometrics, Microsoft, that similar terms should be given the same construction, absent some special evidence to the contrary. Wouldn't this case present that special evidence to the contrary, where you have some patents in re-exam, some not, there's a passage of time, there's new matter being added to later iterations of the family? Absolutely not, Your Honor, and I think that's reflected by the Markman briefs and the position of the parties before the district court, where all the parties agreed that the same construction should apply throughout the family of patents. And indeed, appellants argued in their joint Markman brief that it's often common to use different terms to describe the same structure, and when that happens, you should apply the same construction to those different terms. So, the complexity here is the attempt, now that they've lost at the district court, to try to back away from the efforts that were made to streamline the case for the district court, and that's where the chaos is coming from, Your Honor. It's this backing away of the streamlining that is creating chaos. Microsoft, I think, is a wonderful example. Let's look at one of the terms here in question, retention member, that applies across the board to all of the accused devices. Why the term individual, particularly in the 694 patent? Shouldn't individual be a limitation in that 694 patent, where it is actually in the claim language? The reason why the district court And this kind of illustrates the point. It's in the claim language in the 694, it's not there in the others, and yet you're trying to say retention member should be interpreted identically across all the patents? It's not what we're saying, Your Honor. It's what MDI and ImagePoint said. All the district courts did was to hold Just answer my question. Does individual apply to retention member in a patent where it is listed in the claim language as a term? 694. The 694 includes the term individual in front of retention member. The 543 does not. No, the others don't. If you look at what Mr. Manbeck said in a sworn declaration that was submitted not only to the patent office but also to the district court You're going to write individual out of the claim, is what you're saying, on the basis of what somebody testifies? No, we're not writing individual out. What we're saying is that the specific arguments that this is a case of prosecution history disclaimer. So you look at what the patentee said with regard to the scope of the claim. The patentee said two things. It said it treated both at the district court level By the way, you keep referring to the district court. Didn't it just adopt verbatim everything that you sent them? So this is your position, right? The district court heard evidence the district court determined which to adopt. Fine. Proceed. If you look at what Mr. Manbeck said in a sworn declaration he distinguished the prior art and the retention member feature based on its individuality He did that not only for the 694, but he also did it for the 543 and I think it's worthwhile taking a look at that. That's at A, 1157 And this is paragraph 27 It's where I'm sorry, that was 1157 LSI further argues that Shively and Greenstone anticipate claims 911 of the 543 patent These claims of the 543 patent correspond to claims 9 through 11 of the 694 patent calling for the same structural members or means However, they specify that the retention members are provided on the first and second opposed frame members rather than being secured on those members That's the only distinction they make They do not call out and that was different claim language that differed from the 543 and the 694. Mr. Manbeck never made the distinction based on individual Instead, what Mr. Manbeck said is that Shively and Greenstone failed to anticipate these claims for the same reasons explained above Is that a justification for reading a word out of a claim which has been granted by the patent office? It says individual in the 694 patent Yes, and that is given effect in the 694 It's also given effect in the 543 because of the express and explicit representations and arguments that the appellants made to both the district court and to the prosecution The representation is not there in the 543 and on down. There's no individual mentioned in retention member. Shouldn't we recognize that distinction? You should not recognize the distinction because the appellants did not recognize the distinction. The doctrine of prosecution history claim prosecution history disclaimer is all about looking beyond the plain meaning of the claim terms when the patentee makes express arguments When it's clear and unmistakable that they have intentionally and with malice of forethought decided to disclaim something disavow it when they stand up and say by the way, I certainly don't mean that here and I want you to know that's clear and unmistakable. Do you see those in issue here? Yes, your honor. We do see that this is being clear and unmistakable We think that when somebody states in a sworn declaration saying that the very same reasons apply and that you should construe the claims for both patents in the exact same way that they are equating to That statement that you know those patents fail to anticipate these claims for the same reasons doesn't necessarily mean that all reasons apply to all claims and all limitations. It's a fairly general statement. I admit you can read it your way but that's not the test and I mean it's hard to say that the patent office is you know the examiner is sitting there examining this looking at the claims looking at the argument. The examiner was comfortable and allowed that claim. He didn't say I'll allow it if you add or if you delete We actually have evidence as to what this particular examiner understood here and the evidence shows that the examiner himself understood MBI to be arguing that retention members were individual retention members even with respect to patents in which it didn't expressly say individual and I would direct your honors attention to A1253 This is part of the reexamination record and you will see in the response to arguments that the examiner notes at the first full paragraph, patent owner argues that Greenstone fails to use individual retention members on each of the first and second frame members. This relates to this to a patent that does not include the term individual so this was not understood During the original prosecution of the 543 patent, MDI had to file what kind of a disclaimer to avoid double patenting? Obviousness type Hmm, that's not exactly what you're telling us is it? You're telling us it was clear that the one and only anticipatory reason flat out was what they had to do. Obviousness type leaves a lot of issues open as Judge Nen was saying to you. I want to clarify my position because I think there might be a misconception here What we're arguing here about is prosecution history disclaimer so it's what are the arguments, what are the specific arguments that have been made? It's not just arguments, it's whether there has been a clear and manifest disavowal. You're talking about in effect a waiver of rights, a disclaimer There's a heavy burden there to show that the words in the claim really don't say what they say because there was some unambiguous and clear statement of in effect a disavowal of scope It's not just arguments Yes your honor I totally understand that and what we're saying is that the arguments show a clear and unmistakable disavowal of claims scope and if you look at the original arguments that were made in regard to a retention member you'll see that they highlight the individual nature of it because they stated for example in 1154 that the individual retention members of the 694 patent provide a superior mounting system for the positioning and removal of the dividers for adjusting the space between them. The recitation of individual retention members further distinguishes it from striving and that was the exact language that Ms. Manbeck incorporated by reference saying that exact same reasoning applies also to the 543. But remember your honors as you noted, there are at least three independent grounds for affirming the district court's ruling below. If you agree with the district court's ruling with regard to retention member, divider member or removably held then as appellants have noted in their own briefs those those claim terms relate to all of the asserted claims at issue and so therefore it's positive But we could further have as apparently we do have questions of material fact on the application of the accused devices to the claim construction even if we agree with your claim construction as adopted by the district court. Certainly this court has to review both the claim construction and whether and the district court's finding that there was no material facts at issue given the court's claims construction. I would like to turn to the removably held limitation and let's talk about why there is no material fact at issue there. And look at the way in which Greenstone was distinguished and look at the similarity between Greenstone and between between the accused devices. On page seven of the red brief you will see a depiction of Greenstone and you'll see the leaf springs and the the horizontal bars that need to be pushed to the side and then released vertically out so under Greenstone what you have is a situation where you push to the side parallel, you push down on that spring, you pull out vertically the other side and then you slide back out the bar and you take it out. Now, I'd like you to look at page 27 of our brief and let's look at the accused device. Which brief? Page 29 of the red brief. And this shows a picture of the accused device. And you can see how in all material respects they operate the same way. Here also you have this overlap hanging so you cannot just pull just as in Greenstone you cannot pull just purely perpendicularly out. You have to slide out, you have to pull and then you have to slide it out. So you have that parallel movement that MDI expressly distinguished Greenstone on. So if Greenstone doesn't meet the Removably Held I'm sorry your honor I see my time is up. I think you have five minutes I don't think we added five minutes. Did we? I don't think we added. So you have five minutes please proceed. The other side of the divider in the unit depicted on page 29 That can pull straight out here. So it's parallel. That can pull straight out. Yes sir. Once you pull that out then you slide it over a little and then you can pull out the the other end. Just as in Greenstone. Just as in Greenstone. There's only a slight parallel movement in Greenstone and then you pull out. But this only occurs after it's been released perpendicularly. I'm not sure I understand what you're saying. In Greenstone you have the bar. You push it over slightly and then you pull out vertically, perpendicularly and you pull it out. In the Accused device again you can only pull out perpendicularly on one side and then you can slide it over and pull out. So you've got that parallel movement for both Greenstone and for the PQ's devices. Well maybe that presents some question of validity but I don't know how does that affect infringement and the question of whether the claim even if it's construed the way the district court construed it presents an infringement issue. Your Honor, what we would say is that the very same action that was being distinguished in the prosecution that constitutes the prosecution history disclaimer that same configuration that was disclaimed is the configuration that the accused devices use. Therefore as a matter of law there can be no infringement and remember Your Honors as this court is repeatedly held such as in Pharmacia what constitutes prosecution history disclaimer also constitutes prosecution history estoppel. So if it doesn't literally infringe which acting the same way that the disclaimed configuration it can't it also can't infringe under the doctrine of equivalence and therefore as a matter of law there can be no infringement of this limitation. Your Honor, again this was an issue with regard to consistency I think it's very telling to see there are a lot of arguments by appellants as to whether something was ambiguous or unclear I think it's very telling to see what they argued constituted clear and unambiguous disclaimers to the district court. This is a case about consistency. Prosecution history disclaimer is all about making sure that patentee doesn't say one thing to the patent office and another thing to the district court. Here it's even worse. Here we've got the patentee saying one thing to the patent office and to the district court when it's opposing our motion for summary judgment of invalidity and then later after that motion has been denied, then they turn around and they say that everything was unambiguous. For example, at A 3022 there is a a portion of this is in their opposition to the motion for summary judgment of invalidity and this happens to apply to the second channel means limitation which in opposing summary judgment of invalidity they argued strenuously was a means plus function limitation before the district court on Markman they argued strenuously it was not a means plus function limitation but they also said that there was prosecution history disclaimer that took place here and look at what they said constituted the clear and unmistakable disclaimer. If you see the second full paragraph it says during the prosecution of the 694 patent the aspect of the claimed invention involving quote unquote second channel means was brought to the attention of the patent examiner it was pointed out that quote none of the prior references have the structure or versatility prescribed by the applicants unquote. Accordingly to properly interpret this element of the claim the court must conclude must conclude that the upper and lower horizontal members of the assembly frame include channels into which display members such as many strips may be inserted and carried. I would submit to you they need to be consistent in it the none of the proper prior art references have the structure or versatility prescribed by the applicants constitutes a clear and unambiguous surrender of subject matter certainly the clearer and more and less ambiguous utterly unambiguous statements regarding retention member regarding the binder member and regarding removably held constitute disclaimer prosecution history disclaimer. Thank you Mr. Davis. Mr. Graham I understand you're going to handle rebuttal you have five minutes Thank you Thank you your honor for the opportunity to speak on behalf of ImagePoint as you know ImagePoint is the exclusive licensee under these patents and was heavily involved in the proceedings below your honor I don't know what's going on with this claim your honor this claim construction fiasco in this case putting forward every possible term in the claim obviously a strategic move in an effort to move the district court into a position where the district court would find non infringement much has been made for example in the prosecution history with regard to a discussion about divider members having recesses that make with retainer members that's an example of where that's taken out of context or how that's taken out of context is the preceding sentence in that instance talks about the 543 patent and that the dividers shown in that patent are made of extruded aluminum and then it talks about such dividers have recesses that can make with the retainer members plainly that discussion was in regard to a specific embodiment of the patent we learned from Golight and similar cases that had been decided by this court that in order for prosecution history to be deemed sufficient to constitute a disavow it must be clear in an objective analysis of the prosecution history that the patentee was intending to surrender scope we have over 2000 pages of prosecution history of multiple patents in this case and various statements can be taken out of context and turned into alleged disavows but your honor there is no statement in any of this prosecution that is a clear and unmistakable disavow of plain scope consistent with this court's precedent Mr. Graham was there ever any effort on the part of the patentee to focus the discussion before the district court on say first one patent and then another patent in other words to try to bring this into some manageable form for the district court rather than dump the whole plate full of all patents all issues all disputed points of claim construction was there ever an attempt to say to the let's take this somewhat piecemeal so that it can be more manageable for everyone let's start with patent number so and so and work from there your honor I believe efforts were made to compartmentalize this case into different patents at some point along the way but this court wanted all of this to be done in one proceeding these proceedings were consolidated at some point along the way and quite frankly my impression from this court was that the court did not the court would have viewed that to be a piecemeal process would be my opinion of how the court would respond to an effort like that there were stages of the prosecution of the case where it was consolidated I believe in several respects so I think that would have been counter to the way this particular court was viewing this case the court wanted it all done at once and unfortunately that resulted in this avalanche of issues of claim construction all of which were strategically derived in order to support arguments of non infringement now MDI submitted Manbeck's declaration in all three re-exams you wouldn't contest that his limiting statements apply to those three patents would you? I wouldn't argue that his statements in those documents are part of the prosecution history I would dispute MDI the appellee's interpretation of those statements Mr. Manbeck talks about the term individual in regard to the retainer members when you look at the board's decisions in those three re-exams it's very interesting because the board decided the first re-exam and mentioned the term individual in its decision when it was talking about the divider members in the next patent which did not include the word individual in its decision it did not use the term individual now if we look at that's just one example of how when we look at this prosecution history as a whole it's not proper to say that Mr. Manbeck's comment about the term individual can somehow cause that word individual to be engrafted onto all the claims in all five patents especially when the board made it clear in its decision on the second and third patents that it was not considering that term to be a part of the claims